UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

DEBRIAN FRANKLIN COLEMAN,

      Plaintiff,

vs.

HIRERIGHT, LLC,

      Defendant.

Case No.:

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Debrian Franklin Coleman ("Plaintiff") brings this action on an individual basis, seeking statutory and other damages against defendant HireRight, LLC ("HireRight"), and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

## PRELIMINARY STATEMENT

1.     This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

2.     Defendant HireRight has produced and sold consumer reports concerning Plaintiff's background that wrongfully reported that Plaintiff was a convicted criminal, in violation of the FCRA.

3.     As a result of HireRight's FCRA violations, Plaintiff was harmed by, without limitation, being denied the ability to conduct business with one of the

1

largest life insurance providers in the United States and suffering considerable stress and anguish.

## PARTIES

4.    Plaintiff is a natural person that resides in Lake County, Florida and qualifies as a "consumer" as defined and protected by the FCRA. Plaintiff's legal name is Debrian Franklin Coleman but is also known by the name Brian Franklin Coleman or Brian Coleman.

5.    Defendant HireRight is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). HireRight is also known as General Information Services ("GIS"), as it, from time to time, conducts its operations under the name GIS. HireRight assembles and merges credit and background information from various sources and maintains a database of the assembled and/or merged information from which it then produces new consumer reports. HireRight is authorized to do business in this state, maintains its principal place of business at 14002 East 21st Street, Suite 1200, Tulsa, Oklahoma 74134, regularly conducts business in this judicial district, and can be served with process by way of its registered agent, LegalInc Corporate Services, Inc., located at 624 South Denver Avenue, Suite 300A, Tulsa, Oklahoma 74119.

6.    In 2018, HireRight's predecessor company merged with General Information Services, Inc. ("GIS") and created "[t]he industry's preeminent global

2

background screening organization." *See* https://www.hireright.com/news/press-release/hireright-and-gis-ownership-complete-merger (last visited May 16, 2022).

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred in this district.

## STATEMENT OF FACTS

### a.    The FCRA

9.      The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

10.     To that end, the FCRA imposes the following duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must

reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies.

11.    The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

**b.    Substantive Allegations**

12.    Plaintiff is a licensed insurance agent (also referred to as an "insurance producer") and is currently employed by Symmetry Financial Group ("SFG"), an insurance agency.

13.    Accordingly, Plaintiff is licensed to sell and negotiate life insurance plans on behalf of SFG's numerous insurance carriers.

14.    In order for Plaintiff to be allowed to sell and negotiate life insurance plans on behalf of SFG's insurance carriers, Plaintiff must obtain approval from each individual insurance carrier by submitting an insurance producer application to the individual insurance carrier and passing the carrier's background check.

15.    Once an insurance carrier has approved Plaintiff's insurance producer application, Plaintiff is then issued an "agent code" (also referred to as a "producer number") by the carrier, which allows him to then sell and negotiate life insurance plans on behalf of the insurance carrier and be entitled to earn his payment commission.

16.    However, the benefits of the producer number are contingent on Plaintiff passing the insurance carrier's background check.

17.    SFG works with 42 individual insurance carriers, including Mutual of Omaha.

18.    As of June 2, 2021, Mutual of Omaha was ranked #282 on the Fortune 500 listing, and was recognized by Fortune Magazine to be "one of the largest life insurance providers in the U.S." *See* https://fortune.com/company/mutual-of-omaha-insurance/fortune500/ (last checked May 16, 2022).

19.    As part of his employment process, Plaintiff submitted his insurance producer application to all 42 of SFG's insurance carriers, including Mutual of Omaha, and Plaintiff's application was approved by all 42 insurance carriers (including, at least initially, Mutual of Omaha).

20.    On or about April 15, 2022, Plaintiff received an email from HireRight that attached a copy of the background consumer report that HireRight (using its alternative name of GIS) had produced to Mutual of Omaha concerning Plaintiff which was titled "Background Report" (the "April 15 Consumer Report").

21.    The April 15 Consumer Report reported Plaintiff's name as "Coleman, Brian," and also reported Plaintiff aliases as "COLEMAN, DEBRIAN FRANKLIN and "LCOLEMAN, BRIAN F."

22.     The April 15 Consumer Report also reported Plaintiff's correct residence address, date of birth and social security number.

23.     Following Plaintiff's personal identifying information, the April 15 Consumer Report reported a "Grade" which stated "Review" followed by the picture of a yellow flag.

24.     The April 15 Consumer Report then reported a section titled "Service Summary," in which it indicated that it completed a "County Criminal Search," a "Federal Criminal Search" and a search of "KwikScreen (GIS Criminal Records Database)" and that the "Grade" reported for each of these searched was "Review."

25.     The April 15 Consumer Report then reported a section titled "Criminal and Offense History" which also stated "Review" followed by the picture of a yellow flag.

26.     The "Criminal and Offense History" section reported that HireRight had searched "County OCA, NY (FELONY AND MISDEMEANOR)" and then reported three separate criminal records.

27.     The first criminal record reported on the April 15 Consumer Report reported the following information, without limitation (the "First Misdemeanor Record"):

| Public Case # | Name on Record | Results | Identifiers |
|---|---|---|---|
| 98F-03430 | COLEMAN, BRIAN | See misdemeanor below | Name AND DOB-Full |

| Disposition | Offense | Level | Offense Date | File Date | Arrest Date | Disposition Date |
|---|---|---|---|---|---|---|
| GUILTY | 7TH DEGREE -ATTEMPTED CRIMINAL POSSESSION OF CONTROLLED SUBSTANCE | Misdemeanor | --- | 02/14/1998 | --- | 03/19/1998 |

28.     The First Misdemeanor Record also reported "Probation – 1 YEAR," "Jail Time – 90 DAYS," and "Additional Information: LOCATED IN ERIE COUNTY."

29.     The second criminal record reported on the April 15 Consumer Report reported the following information, without limitation (the "Second Misdemeanor Record"):

| Public Case # | | | Name on Record | | Results | Identifiers |
|---|---|---|---|---|---|---|
| 2011ER005366F | | | COLEMAN, BRIAN | | See misdemeanor below | Name AND DOB-Full |
| Disposition | Offense | Level | | Offense Date | File Date | Arrest Date | Disposition Date |
| GUILTY | 7TH DEGREE -ATTEMPTED CRIMINAL POSSESSION OF CONTROLLED SUBSTANCE | Misdemeanor | | --- | 04/20/2011 | --- | 06/02/2011 |

30. The Second Misdemeanor Record also reported "Probation: 1 YEAR," "Jail Time: 20 DAYS," and "Additional Information: LOCATED IN ERIE COUNTY / INTERMITTENT IMPRISONMENT."

31. Finally, the third criminal record reported on the April 15 Consumer Report reported the following information, without limitation (the "Felony Record"):

| Public Case # | | Name on Record | | Results | | Identifiers | |
|---|---|---|---|---|---|---|---|
| 00-405 | | COLEMAN, BRIAN | | See felony below | | Name AND DOB-Full | |
| Disposition | Offense | Level | | Offense Date | File Date | Arrest Date | Disposition Date |
| GUILTY | 4TH DEGREE -CRIMINAL SALE OF CONTROLLED SUBSTANCE | Felony | | --- | 10/12/200 | --- | 03/26/2001 |

32. The Felony Record also reported "Prison Time: 3 YEARS - 6 YEARS," and "Additional Information: LOCATED IN CHAUTAUQUA COUNTY / LICENSE SUSPENDED 6 MONTHS."

33. As demonstrated by such reporting, HireRight was reporting that the records of the Office of Court Administration for an unidentified country in New York records reflected (i) that Plaintiff was found guilty of a 7th degree misdemeanor of Attempted Criminal Possession of a Controlled Substance, which resulted in a sentence of 90 days of jail time; (ii) that Plaintiff was then found

guilty of a 4th degree *felony* of Criminal Sale of a Controlled Substance, which resulted in a sentence of 3 to 6 years of prison time and a six-month suspension of an unidentified license; and (iii) that Plaintiff was then ***once again*** found guilty of a 7th degree misdemeanor of Attempted Criminal Possession of a Controlled Substance, which resulted in a sentence of 20 days of jail time.

34.    On the basis of the First Misdemeanor Record, the Second Misdemeanor Record, and the Felony Record (collectively, the "Reported Criminal Records"), HireRight quite literally "flagged" Plaintiff's background check for review.

35.    Plaintiff was shocked to read the contents of the April 15 Consumer Report, as Plaintiff had never been accused of a misdemeanor, let alone charged with, found guilty of, and sentenced to years of prison time for two separate misdemeanors and a felony.

36.    On or about April 18, 2022, Plaintiff received a letter from Mutual of Omaha stating that Mutual of Omaha had received information in Plaintiff's consumer report that prevented him from "being contracted with us at this time."

37.    That same day, Plaintiff sent an email to Mutual of Omaha disputing the records reported in the April 15 Consumer Report, as he has a clean record without so much as a speeding ticket.

38.    On or about April 19, 2022, Plaintiff received an email from Mutual of Omaha advising Plaintiff that he needed to contact HireRight directly in order to dispute the reporting.

39.    Accordingly, Plaintiff called HireRight directly disputing the records reported in the April 15 Consumer Report and advised HireRight that the Reported Criminal Records were inaccurate and needed to be corrected.

40.    On or about April 20, 2022, Plaintiff received a letter from HireRight stating that HireRight had completed its reinvestigation of Plaintiff's dispute and had enclosed a copy of a consumer report (the "April 20 Consumer Report") that reflected any changes HireRight may have made to Plaintiff's file as a result of HireRight's reinvestigation.

41.    However, the April 20 Consumer Report still reported the Reported Criminal Records.

42.    This demonstrated that HireRight had not removed the Reported Criminal Records for Plaintiff's file and/or Plaintiff's consumer report as a result of its reinvestigation of Plaintiff's dispute.

43.    On or about April 25, 2022, Plaintiff once again called HireRight directly disputing the Reported Criminal Records, once again advising HireRight that the Reported Criminal Records were inaccurate and needed to be corrected.

44.    To date, HireRight has not responded to Plaintiff's second dispute.

45.     As a direct result of HireRight's reporting of the Reported Criminal Records to Mutual of Omaha, Plaintiff was denied the ability to benefit from his Mutual of Omaha producer number and cannot earn any payment commissions thereby.

46.     Plaintiff's target group of customers are typically older in age and are commonly interested in applying for life insurance with Mutual of Omaha.

47.     This is due to, without limitation, the fact that a large number of Plaintiff's target group of customers have grown up on "*Mutual of Omaha's Wild Kingdom*," an American documentary television program that featured wildlife and nature that was produced from 1963 until 1988 (and was recently revived in 2002 and ran until 2011 on the channel *Animal Planet*).

48.     Accordingly, Plaintiff's inability to sell and negotiate life insurance plans on behalf of Mutual of Omaha has significantly harmed Plaintiff's ability to benefit from the lucrative insurance industry.

49.     But for HireRight's inaccurate reporting, Plaintiff could be earning $500-$700 per Mutual of Omaha policy and could complete numerous Mutual of Omaha policies per day.

50.     Because of the economic harm that Plaintiff has suffered and continues to suffer as a result of HireRight's FCRA violations, Plaintiff has had to resort to finding additional employment to supplement his income.

51.     Further, HireRight's inaccurate reporting has caused Plaintiff to suffer from significant stress and anxiety.

52.     Plaintiff is humiliated and furious that HireRight reported to third parties that Plaintiff was a convicted criminal and that third parties are now of the impression that he is a convicted criminal.

53.     Plaintiff is further distressed that, although Plaintiff disputed the inaccurate reporting, HireRight failed to correct the reporting, which caused Plaintiff to feel that the issue is all but unresolvable.

54.     This has caused Plaintiff to lie awake at night and worry about how he is going to resolve the issue and/or recover from the loss of income, and thereby lose three to four hours of sleep per night on average.

55.     Further, as a result of Plaintiff's emotional distress caused by HireRight's FCRA violations, Plaintiff has reoccurring headaches and instances in which he feels sick to his stomach.

56.     As demonstrated by HireRight's reporting, HireRight fails to maintain and employ reasonable procedures to assure maximal accuracy of the consumer information it provides to third parties.

57.     HireRight failed to take the necessary measures to verify the accuracy of the criminal history information it obtained and reported concerning Plaintiff.

58.     HireRight knows its services are used to make significant decisions concerning a consumer's eligibility for employment, including decisions concerning a consumer's eligibility to act as an insurance producer on behalf of insurance carriers (including Mutual of Omaha).

59.     Nevertheless, instead of employing reasonable procedures as required by the FCRA, HireRight, upon information and belief, blindly collect information in an unreliable manner without verifying whether the information it collects is correctly attributed to the subject consumer.

60.     Alternatively, HireRight, upon information and belief, blindly collects information in an unreliable manner from unreliable third-party vendors in order to repackage and sell such information in its own consumer reports.

61.     Upon information and belief, HireRight buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is maximally accurate.

62.     Upon information and belief, none of HireRight's third-party vendors provide warranties as to the accuracy of the information they sell.

63.     Upon information and belief, HireRight does not independently investigate the information it buys from third-party vendors before reporting such information in consumer reports.

64.    Upon information and belief, HireRight does not exercise the due diligence necessary to ensure the reliability of its third-party vendors.

65.    Upon information and belief, HireRight does not conduct periodic quality assurance audits to ensure that it is receiving reliable information from its third-party vendors.

66.    At common law, HireRight's conduct would have given rise to causes of action based on defamation and invasion of privacy.

67.    Upon information and belief, HireRight has been sued under the FCRA in the past.

68.    Therefore, HireRight has actual notice that its procedures often result in the violations of the FCRA.

69.    Despite such notice, HireRight recklessly, knowingly and/or willingly failed and continue to fail to employ procedures that assure it meets its duties under the FCRA.

70.    The injuries suffered by Plaintiff as a direct result of HireRight's violations, as alleged herein, are the type of injuries that the FCRA was enacted to prevent.

71.    Upon information and belief, HireRight knowingly and willfully maintain deficient procedures because employing reasonable procedures to ensure it meets its duties under the FCRA would reduce its profits.

72.     These deficient procedures are demonstrated by the circumstances surrounding HireRight's purported match of the Criminal Records to Plaintiff, as well as HireRight's subsequent reporting and failure to correct the report upon receipt of Plaintiff's dispute.

73.     Plaintiff's name, Brian Coleman, is an extremely common name.

74.     From the face of HireRight's reporting, it is clear that HireRight was aware of Plaintiff's correct address, Plaintiff's social security number, and the fact that Plaintiff's middle name is Franklin.

75.     Accordingly, HireRight had the ability to verify whether the Reported Criminal Records were attributable to Plaintiff by way of Plaintiff's address, social security number, and/or the fact that Plaintiff's middle name is Franklin.

76.     Despite possessing this information, HireRight purported to match the Reported Criminal Records to Plaintiff only on the basis of his full name and date of birth.

77.     HireRight's purported match even fails on the basis of Plaintiff's full name and date of birth, as the actual offender does not have the middle name Franklin.

78.     Accordingly, HireRight's violations of the FCRA were willful, and Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

79.     Alternatively, HireRight's violations of the FCRA were negligent, and Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

80.     In any event, HireRight is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION

### COUNT I

**Against HireRight for Violations of the FCRA,
15 U.S.C. § 1681e**

81.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

82.     The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, *it shall follow reasonable procedures to assure maximum possible accuracy of the information* concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

83.     HireRight violated § 1681e(b) because it failed to follow reasonable procedures to ensure the maximum possible accuracy of the information it attributed to Plaintiff.

84.    Specifically, HireRight willfully, intentionally, recklessly, and/or negligently violated § 1681e(b) by reporting on consumer reports concerning Plaintiff that Plaintiff was a convicted criminal, in the manner alleged herein.

85.    HireRight's misconduct was a direct and proximate cause of Plaintiff's injuries, as alleged herein.  HireRight is therefore liable to Plaintiff for its negligent and willful failures to follow reasonable policies and procedures.

86.    As a result of HireRight's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## COUNT II

### Against HireRight for Violations of the FCRA, 15 U.S.C. §§ 1681i

87.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

88.    Upon receiving a consumer's dispute, consumer reporting agencies are legally required to conduct a reasonable investigation and correct the disputed information, as follows:

> . . . *if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*, and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information*, *or delete the item from the file* in accordance with paragraph (5), before the end of the 30-day

period beginning on the date on which the agency receives the notice
of the dispute from the consumer or reseller.

15 U.S.C. §1681i(a)(1) (emphasis added).

89.    Consumer reporting agencies are further required to maintain

reasonable procedures to prevent the reappearance of inaccurate information, as

follows:

A consumer reporting agency shall maintain reasonable procedures
designed to prevent the reappearance in a consumer's file, and in
consumer reports on the consumer, of information that is deleted
pursuant to this paragraph….

15 U.S.C. §1681i(a)(5)(C).

90.    HireRight violated § 1681(i) on one or more occasions, as Plaintiff

disputed the inaccurate information, and still, HireRight willfully, intentionally,

recklessly, and/or negligently failed to perform a reasonable reinvestigation and

remove the inaccurate information.

91.    Rather than perform a reasonable reinvestigation and remove the

inaccurate information within 30 days of receiving Plaintiff's dispute, HireRight

sent Plaintiff a response to his dispute demonstrating that it concluded its

reinvestigation of Plaintiff's dispute and would not be removing the inaccurate

reporting.

92.    Moreover, HireRight also violated 1681(i) on one or more occasions,

as it willfully, intentionally, recklessly, and/or negligently failed to maintain

18

reasonable procedures to prevent the reappearance of the inaccurate information that Plaintiff disputed in Plaintiff's file and in consumer reports concerning Plaintiff.

93.     HireRight's violations were a direct and proximate cause of Plaintiff's injuries, as alleged herein. HireRight is therefore liable to Plaintiff for their negligent and willful failures to follow reasonable policies and procedures.

94.     As a result of HireRight's violations of 15 U.S.C. § 1681i, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

i.     Awarding Plaintiff statutory money damages, actual damages and punitive damages as allowed by 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii.     Awarding attorney's fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii.     Awarding such other relief as to this Court may seem just and proper.

## JURY DEMAND

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: May 26, 2022,                  **THE CONSUMER JUSTICE LAW FIRM**

                                      */s/ Yosef Steinmetz*
                                      Yosef Steinmetz, Bar No. 119968
                                      8245 N. 85th Way
                                      Scottsdale, AZ 85258
                                      T: (305) 330-3750
                                      ysteinmetz@cjl.law

                                      *Attorney for Plaintiff Debrian Franklin Coleman*